## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

JORGE PEREZ VEVE, et al.,

Plaintiffs,

v.                                                      Civil No. 12-1073 (GAG)

JULISSA CORPORAN, et al.,

Defendants.

## OPINION & ORDER AND PERMANENT INJUNCTION

Jorge Perez Veve and Batey Zipline Adventure, Inc. (collectively "Plaintiffs") brought this action against Julissa Corporan and Atabey Eco Tours Corp. (collectively "Defendants") alleging trademark infringement, trade dress infringement, false advertisement, and product disparagement under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* (See Docket No. 1.) Plaintiff also alleges trademark and trade dress infringement under Puerto Rico Law Number 169 of December 16, 2009 ("Law 169"), P.R. LAWS ANN. tit. 10, §§ 223 *et seq.*, illegal trespass, and defamation. (Id.) Plaintiffs previously filed a motion for default as to all Defendants at Docket No. 98 which was granted at Docket No. 99. Presently before the court is Plaintiffs' unopposed motion for summary judgment. (Docket No. 100.) After reviewing this submission and the pertinent law, the court **GRANTS** Plaintiffs' motion for summary judgment as to all claims, except trade dress infringement, which the court **DENIES**. The court also enters **DEFAULT JUDGMENT** against Defendants as to all claims.

### I.       Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to

Civil No. 12-1073 (GAG)

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a).  "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).

The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325.  "The movant must aver an absence of evidence to support the nonmoving party's case.  The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).  The nonmovant may establish a fact genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B).  If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255.  Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id.  Summary judgment may be appropriate, however, if the

2

Civil No. 12-1073 (GAG)

non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

## II.    Factual and Procedural Background

In or around January 2008, Jorge Perez Veve ("Perez") began using the "Batey Zipline Adventure" mark in commerce to identify his eco-tour services.[1] (See Docket No. 100-1 ¶ 1.)  The Batey Zipline Adventure mark is registered with the U.S. Patent and Trademark Office ("PTO").  (Id. ¶ 3.) Perez is the owner of the Batey Zipline Adventure corporation ("Batey") and Denisse Cruz ("Cruz") is Batey's  manager.  (Id. ¶ 5.)  Batey's services include activities such as hiking and sightseeing tours in which customers learn about the natural ecosystems of the Tanamá region, specifically in Barrio Caguana, sector Las Vegas.  (Id. ¶¶ 9, 23.)  The tours include visits to caves and navigation of the Tanamá River by boat.  (Id. ¶ 9.)  Both Perez and Cruz state that approximately $90,000 has been invested in advertising and marketing the Batey brand via various media outlets, including the Internet, television, and various newspapers and magazines.  (Id. ¶ 11.)  They also agree that the Internet is the most effective source of advertising for Batey, as it gives them access to clients worldwide.  (Docket No. 100-1 ¶ 12.)

Perez and Cruz started the Batey website in 2008 and have received clients from all over the world.  (Id. ¶¶ 21, 29.)  In addition to the website, Perez also advertised for Batey using banners at the restaurant La Familia and the Centro Ceremonial Indígena de Caguana.  He has also distributed brochures

---

[1] Although Perez states that he began using the Batey Zipline Adventure mark in January 2007, the mark's date of first use in commerce is January 2008 according to the PTO filing discussed above.

Civil No. 12-1073 (GAG)

throughout the Island.  (Id. ¶ 13.)

Defendant Julissa Corporan ("Corporan") began developing her company, Atabey Eco Tours Corp. ("Atabey"), in or around September or October 2010.  (Id. ¶ 2.)  Corporan stated she alone came up with the Atabey concept.  (Id.)  She began marketing the Atabey concept in or around November 2010 and began offering eco-tour services in or around December 2010.  (Docket No. 100-1 ¶ 2.)  According to Corporan, Atabey offers eco-tour services that include "cave tubing" and hiking tours that include cave visits in the Tanamá River region, Barrio Caguana, sector Las Vegas.  (Id. ¶ 10.)  Corporan began marketing Atabey online sometime during 2011.  (Id. ¶ 16.)  She advertised the Atabey brand via banners at the La Familia restaurant and the Centro Ceremonial Indígena de Caguana.  She has also distributed brochures throughout the Island.  (Id. ¶ 14.)  In addition to the website, banners, and brochures, Corporan has advertised Atabey eco-tours in various newspapers and magazines, and on television.  (Id. ¶ 15.)  Corporan also mentioned the importance of the Internet as an advertising source, stating that it allows her to reach clientele from all over the world.  (Id. ¶ 16.)  Lastly, she states that she gets anywhere from zero to 200 clients a month depending on weather conditions.  (Docket No. 100-1 ¶ 16.)

Both Perez and Cruz received phone calls from prospective customers who confused the services Batey offers with the ones Atabey offers, and have often had to explain that the two are different companies.  (Id. ¶ 6.)  Specifically, Cruz stated that she constantly had to instruct customers to follow Batey road signs and not Atabey road signs, which confuse many customers because they are often found side-by-side.  (Id.)  She says that the customers often complained of the phonetic similarity of the words Batey and Atabey.  (Id.)  Furthermore, Mr. Ruben Cintrón ("Cintrón"), formerly half-owner of Atabey, stated that he often received calls at the Atabey phone number from customers asking about Batey

4

Civil No. 12-1073 (GAG)

services.  (Id. ¶ 7.)

Ms. Maribet Sánchez González ("González"), who lived with Corporan during late 2010 when the Atabey concept was being developed, questioned Corporan about using the name Atabey.  (Id.)  Her concerns stemmed from its similarity to the Batey name that was already in use in that region and industry.  Corporan ignored her concerns.  (Docket No. 100-1 ¶ 7.)  Additionally, a Facebook chat found in the record documents a prospective customer, "Are Lis," confusing the services of Atabey and Batey. (Docket No. 100-1 ¶ 8.)

Corporan started the Atabey website and Facebook page in 2011.  (Id. ¶ 16.)  On both, she has uploaded various pictures of the Tanamá region and caves, and the expeditions Atabey offers.  (Id.) However, some of the images displayed on those websites are purportedly of Perez's personal property, most noticeably a suspension bridge.  (Id. ¶¶ 33, 40.)  Perez has told Corporan on various occasions that she cannot enter his property without his permission, nor can she use photos of his property to advertise her business.  (Id. ¶¶ 33, 49.)  While Perez admits that other eco-tourism companies do business on his property, he states that they do so with his permission.  (Id. ¶¶ 31.)

Corporan also issued a "press release" regarding Batey and Perez personally, claiming that Batey was in violation of Puerto Rico Laws 85 and 111.  (Docket Nos. 100-1 ¶¶ 43-45; 101-5.)  In the press release, she stated that Perez was responsible for cutting down an endemic species of plant, the caoba bush, and that she called the Natural Resources Department of Puerto Rico ("DRNA," for its Spanish acronym).  (Id. ¶ 46.)   Corporan published the press release a day after the DRNA commenced its investigation.  (Id.)  Perez denies this allegation and Corporan offers no proof to substantiate her claims. Corporan also claims that Batey operated without a business license and that it did not pay taxes.  (Id. ¶

5

Civil No. 12-1073 (GAG)

53.)  Both statements are false.  (Id.)

The motion for summary judgment is unopposed.  The court has granted Defendants numerous extensions of time, warned Defendants to appear on various occasions, and entertained various motions for default to which Defendants have not responded.  (See Docket Nos. 50, 51, 53, 56, 67, 98, & 99.)  Certain correspondence sent to Defendants, including the entry of default, has been returned as undeliverable.  (See Docket Nos. 110 & 113.)

## IV.    Discussion

Plaintiffs allege that the Batey commercial image consists of the Batey mark, its website, and the images on it, which depict the suspension bridge, hiking trails, caves, zipline platforms, and organic farming.  (See Docket No. 100-1 ¶ 27.)  They claim that Atabey has infringed on their trademark and trade dress as well as engaged in false advertising, product disparagement, and trespass.  The court addresses each allegation in turn.

### A.    Trademark Infringement

The Lanham Act provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which– is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).  Trademark rights are acquired through use of the mark and not registration.

"That right, which accrues from the use of a particular name or symbol, is essentially a common law

Civil No. 12-1073 (GAG)

property right . . . ."  Keebler Co. v. Rovira Biscuit Corp., 624 F.2d 366, 372 (1st Cir. 1980) (internal

citation omitted). Therefore, the fact that Batey did not register its mark until September 2012 does not

preclude Plaintiffs from relief.  See Boston Athletic Ass'n. v. Sullivan, 867 F.2d 22, 27 (1st Cir. 1989)

(quoting Keebler, 624 F.2d at 372).  "Furthermore, a mark provides protection not only for the product

or service to which it is originally applied but also to related items or services."  Boston Athletic Ass'n.,

867 F.2d at 27 (citation omitted).

     According to the registration of the Batey trademark that the PTO issued  on September 25, 2012

(No. 4,212,723), the Batey mark has been used in commerce since January 1, 2008.  (See Docket No.

101-27.)  As such, the court concludes that Perez has the right to the exclusive use of that mark and has

a right to preclude the use of other similar marks as of that date.  See Keebler Co., 624 F.2d at 372; 15

U.S.C. § 1125(a)(1).  Therefore, the central issue in this matter is whether there is a likelihood for

confusion between the Batey and Atabey marks.

     The relevant inquiry to determine a likelihood of confusion is "whether members of the

purchasing public are likely to mistake defendants' products or services for plaintiff's protected products

or services within the same category."  Veryfine Prod., Inc. v. Colon Bros., Inc., 799 F. Supp. 240, 251

(D.P.R. 1992) (quoting Boston Athletic Ass'n., 867 F.2d at 28 (1st Cir. 1989)).  When determining a

likelihood of confusion, the court should consider the following eight factors: (1) the similarity of the

marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the

relationship of the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual

confusion; (7) the defendant's intent in adopting its mark, and; (8) the strength of the plaintiff's mark.

Boston Athletic Ass'n., 867 F.2d at 29 (citations omitted).  No one factor is necessarily determinative,

**Civil No. 12-1073 (GAG)**

but each must be considered.  Id.  The court now addresses each factor in turn.

        1.       <u>Similarity of the Marks</u>

"[S]imilarity is determined on the basis of the total effect of the designation, rather than a comparison of the individual features." <u>Id.</u> (internal citation omitted) (internal quotation marks omitted) Put differently, "The test of consumer confusion 'is not whether the products can be differentiated when subjected to a side-by-side comparison, but rather whether they create the same general overall impression.'"  <u>Veryfine</u>, 799 F. Supp. at 251 (quoting <u>RJR Foods, Inc. v. White Rock Corp.</u>, 603 F.2d 1058,1060 (2d Cir. 1979)).

Although Batey is disyllabic and Atabey is trisyllabic, they sound remarkably similar.  In addition, both companies' web pages have similar dark-colored backgrounds and are covered with pictures of groups of tourists on various stages of hikes through forested areas and caves.  One difference is that Batey's website has its registered trademark on it– an image of the word "Batey" in stylized lettering in the foreground with a large *Z* outstretched so as to look like a zip-line in the background-- whereas the mark depicted on the Atabey website displays a taino sun bearing a superimposed smiley face.  (<u>See</u> Docket Nos. 1-3; 1-5.)  While the two labels are distinct, they are not prominent features of the websites or of the other marketing tools.  The websites, when taken as a whole, create the same general overall impression.  (<u>Id.</u>); <u>Veryfine</u>, 799 F. Supp. at 251 (quoting <u>RJR Foods, Inc. v. White Rock Corp.</u>, 603 F.2d 1058,1060 (2d Cir. 1979)); <u>see also</u> <u>Reno Ass'n, Inc. v. McCord</u>, 452 F. 3d 1126, 1137 (9th Cir. 2006) (quoting <u>Lindy Pen Co. v. Bic Pen Corp.</u>, 725 F.2d 1240, 1245 (9th Cir. 1984) ("[A] court does not consider the similarity of the marks in the abstract, but rather 'in light of the way the marks are encountered in the marketplace and the circumstances surrounding the purchase.'") (reversed in part on

**Civil No. 12-1073 (GAG)**

other grounds).  Furthermore, when the goods or services are virtually identical, the marks need not be as similar for there to be a likelihood of confusion.  See Bridgestone Am. Tire Operations, LLC v. Fed. Corp., 673 F.3d 1330, 1337 (Fed. Cir. 2012) (likelihood of confusion between "Potenza" and "Turanza" marks is greater because both are referring to tires).  Thus, this factor weighs in Plaintiffs' favor.

2.  Similarity of the Goods (Services)

Both Batey and Atabey advertise and provide hiking and sightseeing tours in which customers learn about the Tanamá River region.  The tours both companies provide traverse the same or similar areas and both offer visits to Utuado caves and opportunities to navigate the Tanamá River.  The only difference is that Batey also offers customers the option to view the region from a zipline.  Other than that one option, the goods offered by both companies are the same.  Therefore, the second prong leans in Plaintiffs' favor.

3.  Relationship Between the Parties' Channels of Trade, Relationship Between the Parties' Advertising, and Classes of Prospective Purchasers

These three factors are considered together.  Boston Athletic Ass'n, 867 F.2d at 30.  Both Batey and Atabey use the same channel of trade– the Internet –to make most of their sales.  Perez and Corporan have both attested to the importance of the Internet in reaching and communicating with potential clients. They also advertise in very similar and common ways– the Internet, print, and television.  Id. (parties sold shirts in Boston area shops and along Boston Marathon race course, and sales revolved around the race date.)  Significantly, both have banners located at the restaurant La Familia and the Centro Ceremonial Indígena de Caguana, which exemplifies the similarities between their respective advertising campaigns. Id. (parties had displays in store windows and booths at the exposition and along race course).  They have each distributed brochures throughout the Island.  Lastly, due to the unique nature of their market, both

**Civil No. 12-1073 (GAG)**

companies advertise to the same class of prospective purchasers who are interested in eco-tourism.  Id. (prospective purchasers for both parties were marathon participants and fans).  While the size of the market transcends Puerto Rico's borders, the court finds that both Batey and Atabey clearly compete for the same class of customers.  Therefore, there is a strong similarity between the parties' channels of trade, advertising, and class of prospective purchasers.

        4.      Evidence of Actual Confusion

Plaintiffs present evidence of various instances of actual confusion.[2]  For one, prospective customers called one business inquiring as to services offered by the other.  Members of both businesses have attested to this confusion.  Employees have had to explain to customers that they need to follow signs leading to Batey, and to be aware that Batey and Atabey are not the same business.  Plaintiffs also present evidence of one instance in which a prospective customer, "Are Lis," confused Batey and Atabey on Facebook.  The amount of actual confusion indicates a strong similarity between the marks.  See Boston Athletic Ass'n, 867 F.2d at 22 (purchasers tried returning shirts bearing "Boston Marathon" moniker purchased from infringing party at official Boston Marathon booth and were confused as to why they were unable to do so).  This factor also militates in Plaintiffs' favor.

        5.      Corporan's Intent in Adopting the Atabey Mark

Corporan stated that in September or October 2010, she alone came up with the concept for Atabey.  Corporan is also responsible for developing and designing the Atabey website and Facebook

---

[2] The court notes that Plaintiffs can still prevail even without evidence of any actual confusion.  Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812, 818 (1st Cir. 1987) (likelihood of confusion still existed as to whether car dealer was an authorized VW car dealer even though no evidence of actual confusion was presented.)

Civil No. 12-1073 (GAG)

page.  While Corporan was developing the Atabey concept, she stayed at Sanchez's house.  Sanchez questioned Corporan about whether using the Atabey name was a good idea, considering that the Batey name was already in use and referred to an almost identical concept.  Corporan ignored Sanchez's doubts. Corporan purposely adopted a mark bearing great phonetic likeness to the already existent Batey mark to market almost identical services.  See David Sherman Corp. v. Heublein, Inc., 340 F.2d 377, 381 (8th Cir. 1965) (SARNOFF vodka phonetically similar to SMIRNOFF vodka).

6.    The Strength of the Batey Trademark

The Batey mark is a strong mark given the limited nature of the industry.  It has been advertised over the Internet, in print, and on television.  Perez has spent approximately $90,000 on developing and advertising Batey.  Furthermore, it has been registered with the PTO and the Municipality of Utuado also issued a patent.  As a strong mark, it is entitled to broader protection against infringement.  Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 492 (1st Cir. 1981) (citations omitted).

Considering all of these factors, the court finds Defendants infringed on Plaintiffs' mark in violation of federal law.[3]

**B.    Trade Dress Infringement**

For trade dress to be protected under 15 U.S.C. § 1125(a), Plaintiff must prove that the dress is used in commerce, non-functional, and distinctive.  Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC, 259 F.3d 25, 38 (1st Cir. 2001).  "Distinctiveness may be either 'inherent,' that is, the 'intrinsic

---

[3]  Given that the Puerto Rico Supreme Court has held that federal trademark law is highly persuasive in determining application of Puerto Rico's trademark law, the court applies the same analysis and reaches the same conclusions as above concerning Plaintiffs claims for violations of Articles 26 and 27 of Puerto Rico Law Number 169.  See Arribas & Assoc. v. Am. Home Prod., 165 D.P.R. 598, 608 (2005).

Civil No. 12-1073 (GAG)

nature of the trade dress serves to identify a particular source,'" or "'acquired' meaning that the trade dress has acquired a 'secondary meaning' in which the public views its primary significance as 'identifying the source of the product rather than the product itself.'" Id. (citing Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992)) (internal citations omitted).  To prove there was infringement of a protected trade dress, Plaintiff must show that another's use of the same or similar trade dress is likely to cause confusion among consumers.  Yankee Candle, 259 F.3d at 38.  Whether or not there is a likelihood of confusion between Batey and Atabey has already been discussed.  The court thus resolves whether the Batey trade dress is distinctive, non-functional, and used in commerce.

Plaintiffs claim that their trade dress is "an arrangement of elements that include: the suspension bridge, caves, hiking paths, a sustainable or eco-friendly farming system, forest and hills, and a network of platforms interconnected by zip lines (or canopies)."  (See Docket No. 100 at 32.)  That Batey's trade dress is used in commerce is not in question.  As mentioned earlier, Batey has engaged in significant marketing and advertising ventures, reaching clients around the world through the Internet to the tune of $90,000.  However, the elements Plaintiffs list as their trade dress are inherently functional.  A suspension bridge, pathways, and ziplines all serve a purpose, specifically for movement from one place to another.  To allow Plaintiffs to protect these functional elements would be contrary to the public interest of enhancing legitimate economic competition.  See Taco Cabana Int'l, Inc. v. Two Pesos Inc., 932 F.2d 1113, 1118-19 (5th Cir. 1991).  Because Plaintiffs do not meet the burden of proving that their trade dress is non-functional, the court does not address whether its trade dress is inherently distinctive.[4]

---

[4]  Again, the court applies the same analysis and reaches the same conclusions as above in relation to Plaintiffs claims for violations of Articles 26 and 27 of Puerto Rico Law Number 169.  See Arribas, 165 D.P.R. at 608.

Civil No. 12-1073 (GAG)

### C.   False Advertising

Section 1125(a) of the Lanham Act also provides, in relevant part:

> Any person who, on or in connection with any goods or services, or any
> container for goods, *uses in commerce any word, term, name, symbol, or
> device, or any combination thereof*, or any false designation of origin,
> false or misleading description of fact, or false or misleading
> representation of fact, which– in commercial advertising or promotion,
> *misrepresents the nature, characteristics, qualities, or geographic origin*
> of his or her or another person's goods, services, or commercial activities,
> shall be liable in a civil action by any person who believes that he or she
> is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B) (emphasis added).

Therefore, to prove a false advertising claim under the Lanham Act, Plaintiffs must prove: (1)
Defendants made a false or misleading description of fact or representation of fact in a commercial
advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely
to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to
deceive a substantial segment of its audience; (4) Defendant placed the false or misleading statement in
interstate commerce; and (5) Plaintiff has been or is likely to be injured as a result of the
misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its
products. Cashmere & Camel Hair Mfr's. Inst. v. Saks Fifth Ave., 284 F.3d 302, 310-11 (1st Cir. 2002)
(citing Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 33 n.6 (1st Cir. 2000)).

Plaintiff can successfully prove a false advertising claim by either showing that the advertisement
is false on its face, or that the advertisement is literally true or ambiguous but is likely to mislead and
confuse consumers. Clorox, 228 F.3d at 33. If Plaintiff proves that the advertisement is literally false,
the court may grant relief without considering evidence of consumer reaction. Id. at 34. Generally,

Civil No. 12-1073 (GAG)

whether or not an advertisement is literally false is an issue of fact.  Id.  The fact finder must make two

assessments: (1) the scope of the claim conveyed by the advertisement, and; (2) whether or not that claim

is false.  Id.  While literal falsity determinations are usually made based upon the advertisement's explicit

claims, the court may also consider any claims made by "necessary implication"– a claim that, if

considering the advertisement as a whole, the audience would recognize as readily as if it had been

explicitly stated.  Id. at 35.

Plaintiffs contend that Defendants made false statements of fact in commercial advertisements

whenever they used photographs that depicted Plaintiffs' property, specifically pictures of the suspension

bridge and caves located on Plaintiffs' land.  Plaintiffs argue that they have lost business to Atabey

because of these images and, consequently, have suffered harm.  The court agrees.

Defendants made a false statement of fact when they posted images of the suspension bridge and

the Cerro Hueco cave on their website and Facebook page.  While they do not explicitly state that the

suspension bridge and Cerro Hueco cave are part of the Atabey experience, the necessary implication

presented by the pictures is that they comprise part of it.  That representation is material because it depicts

attractive elements of the eco-tour experience that Defendants may not offer without Plaintiffs'

permission, which will likely influence the purchasing decision of the consumer.  See NBA v. Motorola

Inc., 105 F.3d 841, 855 (2d Cir. 1997) ( material misstatement involves "inherent quality of characteristic

of the product").  The claim here is literally false.  Therefore, the court grants relief without considering

evidence of consumer reaction.  See Clorox, 228 F.3d at 33.  Defendants placed the misleading pictures

on the Internet, and through the Internet have gained clients from all over the world.  Based on those

images, Plaintiffs have been injured through a direct diversion of sales from Batey to Atabey.

14

Civil No. 12-1073 (GAG)

Defendants also state on their website that they are "the only certified sustainable operation endorsed by the Puerto Rico Tourism Company in the region." (See Docket No. 101-24.)  However, no evidence supports that such an endorsement exists.  Therefore, this is a second instance in which Defendants have made a false statement of material fact in a commercial advertisement, placed in interstate commerce, that will likely affect the purchasing decision of the customer through direct diversion of sales.  Cashmere, 284 F.3d at 310.

### D.    Commercial Disparagement

To prove commercial disparagement under U.S.C. § 1125(a)(1)(B), Plaintiff must prove that Defendants made a representation that: "(a) constitute[d] commercial speech; (b) was made with the intent of influencing potential customers to purchase the speaker's goods or services; (c) [was made] by a" competitor, and; "(d) [was] disseminated to the consuming public in such a way as to constitute 'advertising' or 'promotion.'"  Podiatrist Ass'n., Inc. v. La Cruz Azul de P.R., Inc., 332 F.3d 6, 19 (1st Cir. 2003) (string citation omitted).  Plaintiffs allege that Defendants engaged in commercial disparagement when Corporan published a "press release" on the Atabey website and Facebook page stating that Perez violated various environmental laws, and that Plaintiffs did not pay taxes while operating without the requisite government permits and business liability insurance.

The court finds that these statements constitute commercial speech because the statements were made with the intent to influence potential customers.  The "press release" was published on both the Atabey website and Facebook page.  Id.  The release attacks the safety of Batey's operations and its commitment to environmental protection, which is an essential part of the quality of the services that Batey offers, implying that Atabey's services are better.  Atabey and Batey are competitors, and because

15

Civil No. 12-1073 (GAG)

the allegations were published on Atabey's website under the title "press release," the court finds that it was disseminated in such a way as to constitute "advertising." See generally Sublime Prods., Inc. v. Gerber Prods., Inc., 579 F. Supp. 248 (S.D.N.Y. 1984) (injunction against taking photos and samples of Plaintiff's lamps to solicit customers for defendant's own forthcoming line of lamps was appropriate).

###    E.    Defamation

Despite failing to cite under which law they seek redress, Plaintiffs also filed a claim for defamation.  Since the allegations stem from statements published online, the court analyzes the claim under Puerto Rico's libel statute, which states, "Libel is the malicious defamation of a person made public by writing . . . or other mode of publication tending to . . . injure him in his business, or in any other way to throw discredit, contempt or dishonor upon him[.]"  See 32 P.R. LAWS ANN. § 3141.  Generally, it is necessary to establish that the publication of a communication imputed to be false and derogatory causes a private individual harm and that it was due to negligence.  See generally Villanueva v. Hernandez Class, 128 D.P.R. 618 (1991).

In their "press release," Defendants claimed Perez violated various environmental laws, that neither he nor Batey paid taxes, that they operate without the requisite government permits, and that they operate without business liability insurance.  Plaintiffs submissions of tax returns and copies of the required local permits compel the court to find that no reasonable juror could find Defendants' allegations credible.  Plaintiffs also declare that they have the requisite insurance and are not operating in violation of any environmental laws, leading the court to find that the statements made by Defendants in the "press release" are false.  These allegations, viewed by dozens of browsers, have injured Perez in his business. The court also finds that these statements were made negligently, if not maliciously, because they were

16

Civil No. 12-1073 (GAG)

made without any effort on behalf of Defendants to substantiate statements with evidence.  Id. at 22; See also Torres Silva v. El Mundo, Inc., 106 D.P.R. 415, 425-26 (1977).

### F.    Trespass

Lastly, Plaintiffs claim that Defendants violated Article 280 of the Puerto Rico Civil Code when they knowingly entered Perez's property without his permission.  Plaintiffs put Defendants on notice that they were entering Plaintiff's property when they put up signs that identified the property as private and warned against entry.  Plaintiffs also told Defendants on more than one occasion that they were trespassing illegally on their property.  The court finds that, while the facts support a claim for trespass, Plaintiffs are not entitled to relief under § 1111, as that section relates to trespass to chattel and not trespass to real property.  See 31 P.R. LAWS ANN. tit. 31 § 1111; see also U.S. v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (litigant has "an obligation to spell out its arguments squarely and distinctly").  Instead, the court grants Plaintiffs relief under § 1461, which has been interpreted to mean:

> [A] person who enters upon lands of another without the consent and to the damage of its owner commits trespass, and it has been said that 'a person who enters upon the land of another without leave to lead off his own runaway horse and who breaks a blade of grass in so doing commits a trespass.

Garcia v. Rodriguez, 27 P.R.R. 284 (1919).  Therefore, the court finds Defendants liable for trespass.

## V.    Conclusion

The court thus **GRANTS** summary judgment as to Plaintiffs' trademark infringement, false advertising, commercial disparagement, defamation, and trespass claims, and **DENIES** summary judgment as to Plaintiffs' trade dress claims.  **DEFAULT JUDGMENT** on all claims shall also issue forthwith.  The court hereby **PERMANENTLY ENJOINS** Defendants from engaging in the unlawful

**Civil No. 12-1073 (GAG)**

practices discussed above and conducting her business under the name "Atabey Eco Tours".

**SO ORDERED.**

In San Juan, Puerto Rico this 11th day of October, 2013

*S/Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge

18